RAJ V. ABHYANKER, SBN 233284
Email: raj@legalforcelaw.com
WENSHENG MA, SBN 299961
Email: vincent@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:    (650) 965-8731
Facsimile:    (650) 989-2131

Attorneys for Plaintiff,
LegalForce RAPC Worldwide, P.C.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C.; | Case No.  19-1538 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1.  LANHAM ACT, 15 U.S.C. § 1125(a); |
| ITP SERVICE; WTP; ITR REGISTER; GLOTRADE S.R.O.; WTMR LLC; PATENT & TRADEMARK RESOURCE CENTER LLC, TRADEMARK RENEWAL SERVICE, PATENT & TRADEMARK OFFICE LLC, PATENT & TRADEMARK BUREAU, U.S. TRADEMARK COMPLIANCE OFFICE, USTM CORPORATION; USA BOX, INC.; SIGLO-21, INC.; U.S. GLOBAL MAIL, INC.; SERVCORP WASHINGTON LLC; PREMIER OFFICE CENTERS, LLC; REGUS MANAGEMENT GROUP LLC; LAWYERS' CHOICE SUITES, INC.; AND STAT OFFICE SOLUTIONS, and DOES 1-1000; | 2.  CALIFORNIA FALSE & MISLEADING ADVERTISING; <br> 3.  CALIFORNIA UNFAIR COMPETITION;  AND <br> 4.  INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE. <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | |

1

2      1.   LegalForce RAPC Worldwide, P.C. ("RAPC" or "Plaintiff") alleges as follows

3      against the above captioned defendants including ITP Service ("ITP"), WTP, ITR Register

4      ("ITR"), GLOTRADE s.r.o. ("GLOTRADE"), WTMR, LLC ("WTMR"), Patent &

5      Trademark Resource Center LLC ("PTRC"), Trademark Renewal Service ("TRS"), Patent

6      & Trademark Office LLC ("PTO"), Patent & Trademark Bureau ("PTB"), U.S. Trademark

7      Compliance Office ("USTCO"), USTM Corporation ("USTM") (collectively "Mailer

8      Defendants"), and USA Box, Inc. ("USA Box"), Siglo-21, Inc., U.S. Global Mail, Inc.

9      ("U.S. Global Mail"), Servcorp Washington LLC (also known as Servcorp US Holdings

10     Inc.), Premier Office Centers LLC, Regus Management Group, LLC; Lawyers' Choice

11     Suites, Inc., and The Stat Organization, ("Logistics Enablers") (collectively with Mailer

12     Defendants as "Defendants") upon actual knowledge with respect to themselves and their

13     own acts, and upon information and belief as to all other matters.

14                                    **INTRODUCTION**

15     **Proliferating Trademark Scams**

16     2.   There is a troubling trend growing in the shadows of the trademark world.

17     Unscrupulous profiteers are setting up a *revolving door* of official-U.S. government

18     sounding entities to prey on the fears of individual and small business trademark applicants

19     before the United States Patent & Trademark Office (USPTO). These shadow scammers use

20     publicly available trademark filer information to send targeted "solicitations" to the

21     trademark applicants.  The "solicitations" are constructed to make the trademark applicant

22     believe that an official U.S. government agency or the USPTO itself is sending a letter to

23     them, raising fear among the unsuspecting public that they must pay large amounts of

24     money or forfeit trademark rights.   To attempt covering tracks and evading liability, small

25     typeface print often appears to disclaim what is obsensibly represented in the larger text and

26     thematically throughout the postal mailer.    Contact information of these companies is

27     dubious at best.  New names, new addresses, and new postal boxes are a common practice

28     by these entities to make it more difficult to identify them.  Most of these mailers and the

purported services they advertise to provide result in no value to trademark owners.

3.  Most of these predatory entities' tentacles appear to originate, or be strongly tied to, countries outside the United States (most frequently from eastern Europe), but they work with enablers in the United States to set up domestic addresses and put on the appearance of legitimacy in order to further cloak their scheme.

4.  Several trademark organizations have tried to raise awareness and warn others about these harmful unsolicited offers for trademark services.

5.  The International Trademark Association ("INTA"), a global association of intellectual property owners and professionals, warns of these unsolicited offers that cull public records for trademark owners' information  and then send an official looking form for payment to "publish" or "register" the trademark, but the offered services are often "unnecessary or duplicate the services provided by the government office." *See* http://www.inta.org/TrademarkBasics/FactSheets/Pages/UnsolicitedOffersUS.aspx.    A printout of this warning is attached as **Exhibit 1**.

6.  INTA describes the scam as follows:

> This is how the trick works. Armed with your trademark, name, and address and similar information for thousands of other trademark owners, these companies mass-mail or email an official-looking form requesting the payment of fees (usually an odd amount, such as $587.00) to "publish" or "register" your trademark. The services they offer often are unnecessary or duplicate the services provided by the government trademark office. In other situations, the mailing may offer what might otherwise be a legitimate service (e.g., a trademark watch service), but under false pretenses (e.g., by using a name, such as "USTPA," that sounds like an official government agency).

*Id.*

7.  Similarly, the United States Patent and Trademark Office ("USPTO") published a list and examples of these solicitations with a warning that "[s]ome trademark applicants and registrants have paid fees to private companies, mistakenly thinking they were paying fees required by the USPTO. We do not endorse any of these private companies and you are not required to use them."

*See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

8.  A printout of USPTO's warning is attached as **Exhibit 2** (including highlights of various entities named or mentioned in this complaint).

9.  The USPTO further notes that since it is not an enforcement agency, it cannot legally stop these companies sending out the deceptive unsolicited offers and can only attempt to raise awareness of the deceptive conduct. *See id.*  Specifically, the USPTO asks those who have paid money to companies to send an email to TrademarkAssistanceCenter@uspto.gov, which in effect appears to do nothing but document the practice on the USPTO's website.

10. In order to raise awareness and attempt to address the issue, the USPTO held a "Roundtable on Fraudulent Solicitations to Trademark Owners" on July 26, 2017. In the transcript of that event, available on USPTO's website, the USPTO Commissioner for Trademarks, Mary Denison, remarked as follows:

> Fraudulent solicitations may come in several different forms. They might come in a renewal scam format, they might come in a useless database scam, they might be a monitoring scam, or  they might be something related to customs and border protection recordation. So, there are a lot of variations on this, but the one thing that we do know is that they keep coming.

*See*

https://www.uspto.gov/sites/default/files/documents/Transcript_FraudulentSolicitations.pdf

at 5:10-17. A printout of the relevant excerpt of the transcript is attached as **Exhibit 3**. The Mailer Defendants' actions described below fall into all of these categories.

11. Internationally, the European Union Intellectual Property Office ("EUIPO"), notes that "[u]sers are receiving an increasing amount of unsolicited mail from companies requesting payment for trade mark and design services such as publication, registration or entry in business directories." The EUIPO provides a searchable database of examples of these unsolicited offers to help people "avoid misleading payment requests."  *See* https://euipo.europa.eu/ohimportal/en/misleading-invoices. A copy of the EUIPO warning is attached as **Exhibit 4** (including entities named or mentioned in this complaint).

12. Additionally, the World Intellectual Property Organization ("WIPO"), a United Nations agency that encourages nations to cooperate on protecting intellectual property, also

1    has a warning regarding the unsolicited offers, listing examples, and giving advice on

2    "mitigating this unscrupulous practice."

3        13. *See*  https://www.wipo.int/pct/en/warning/pct_warning.html.  A printout of WIPO's

4    warning is attached as **Exhibit 5** (including highlights of various entities named or

5    mentioned in this complaint).

6        14. In the past year alone, after RAPC decided to take the added step to further protect

7    its clients by listing it own address as care of (c/o) owner address, RAPC has received about

8    3,000 of these deceptive unsolicited offers addressed to Plaintiffs or to RAPC's clients, and

9    RAPC continues to receive dozens every week.

10       15. The deceptive mailers demand payments ranging from $495 (USTM) to $2,890 (Glo

11   Trade).  Often these mailers are sent to U.S. customers from European entities that clearly

12   provide no service to assist U.S. customers with protecting their U.S. trademarks. RAPC

13   received several of these mailings from entities such as TMP Register in Poland; Trademark

14   Edition in Hungary, Malta, or Curacao (depending on which mailer and postmark is received

15   that day); and multiple confusingly similar entities out of the Czech Republic—IPTR s.r.o.,

16   IPTA s.r.o., and WPTR s.r.o. ***See* Exhibit 36 (**showing copies of these mailers and envelopes

17   that have been redacted for client privacy).

18       16. These entities are listed on multiple websites with warnings about the scams that

19   these entities are running through these misleading mailers. *See* **Exhibit 2** for USPTO's

20   warning listing specific entities, **Exhibit 4** showing a small sample of entities listed by the

21   EUIPO, and **Exhibit 5** for a list from the WIPO (including highlights of various entities

22   named or mentioned in this complaint); *see also* **Exhibit 37** showing a warning from the

23   German Patent and Trade Mark Office (DPMA) and other articles that specifically reference

24   several of the entities from this complaint (relevant entity names are highlighted). Many of

25   these entities appear to be related and change their names often in order to continue the

26   scams by trying to prevent U.S. consumers from easily locating the negative articles and

27   reviews on the internet.

28       17. RAPC's clients regularly reach out to RAPC about the deceptive unsolicited offers

because they are confused as to whether the notices originate from RAPC, a legitimate U.S. online advertiser/law firm, or from the U.S. government and worry that by not paying the fee their trademark is at risk. The fraudulent solicitations have also been directed by email and attempt to confuse the sender into thinking it is originating from the government or a legitimate company. A printout of one such email, redacted for privacy and confidentiality, is attached as **Exhibit 35**.  A percentage of RAPC's clients have and are likely to continue acting on such notices resulting in harm to trust in the legal profession as a whole, with RAPC, the legal framework of the United States of America, and with the USPTO generally.

## THE PARTIES

### Plaintiff

18. RAPC is a California professional corporation with a principal place of business at 1580 W. El Camino Real, Suite 10, Mountain View, CA 94040, and a law office located at 446 E. Southern Ave., Tempe, AZ 85282.

### Defendants

19. Upon information and belief, ITP is a business entity of unknown form, with an address at 8345 NW 66 ST #2000, Miami, FL 33166-7896, doing business in Florida, California, and elsewhere in the United States.

20. Upon information and belief, WTP is a business entity of unknown form, with an address at 8345 NW 66 ST #2000, Miami, FL 33166-7896, doing business in Florida, California, and elsewhere in the United States.

21. Upon information and belief, ITR is a business entity of unknown form, with an address at 8345 NW 66 ST #2000, Miami, FL 33166-7896, doing business in Florida, California, and elsewhere in the United States.

22. Upon information and belief, GLOTRADE is a business entity of unknown form with an address at 1321 Upland Drive, Suite 8441, Houston, TX 77043-4718, doing business in Texas, California, and elsewhere in the United States.

23. Upon information and belief, WTMR is a limited liability company with an address at 1717 Pennsylvania Ave NW, Ste 1025, Washington, DC 20006, doing business in

Washington, D.C., California, and elsewhere in the United States.

24. Upon information and belief, PTRC is a limited liability company with an address at 17200 153rd Ave SE, Yelm, WA 98597, with Oleg Popko as the sole member/manager, and doing business in Washington, California and elsewhere in the United States.

25. Upon information and belief, TRS is a suspended California corporation with a principal place of business at 8380 Miramar Mall Suite 232, San Diego, California 92121, an address at 910 17th St. NW 8th Floor, Washington, DC 20006, doing business in Washington, D.C., California, and elsewhere in the United States.

26. Upon information and belief TRS is also known under several alternate names, including Corporate Compliance Center, United States Patent Renewal Services, Fictitious Business Name Renewal Service, Renewal Services, Inc., and Compliance Filings, Inc.

27. Upon information and belief, PTO is a limited liability company with an address at 299 Park Avenue, 6th Floor, New York, NY 10171, doing business in New York, New Jersey, California and elsewhere in the United States.

28. Upon information and belief, PTB is a business entity of unknown form, with an address at 1500 Market Street, 12th Floor, East Tower, Philadelphia, PA 19102, doing business in New York, Pennsylvania, California, and elsewhere in the United States.

29. Upon information and belief, USTCO is a Delaware corporation with an address at 1201 N. Orange St. Suite 7459, Wilmington, DE 19801, doing business in Delaware, California, and elsewhere in the United States.

30. Upon information and belief, USTM is an Idaho corporation with an address of PO BOX 51688, Idaho Falls, Idaho 83405-1688, Directors, Ernesto Melo and John (Jack) Briggs, doing business in Idaho, California, and elsewhere in the United States.

31. Upon information and belief, USA Box is a Florida corporation with a principal place of business at 84345 NW 66 ST, Miami, Florida 33166.

32. Upon information and belief, Siglo-21, Inc. is a New York corporation with a principal place of business at 244 Madison Ave, New York, NY 10016.

33. Upon information and belief, U.S. Global Mail is a Texas corporation with a

principal place of business at 1321 Upland Drive, Houston, TX 77043.

34. Upon information and belief, Servcorp Washington LLC (also known as Servcorp US Holdings, Inc.) is a Delaware limited liability company with a place of business at 1717 Pennsylvania Ave NW, Ste 1025, Washington, D.C. 20006.

35. Upon information and belief, Regus Management Group LLC is a Texas limited liability company with places of business at 299 Park Avenue, 6th Floor, New York, New York, 10171 101 Hudson Street, Suite 2100, Jersey City, New Jersey 07302, and 1500 Market Street, 12th Floor, East Tower, Philadelphia, Philadelphia 19102.

36. Upon information and belief, Lawyers' Choice Suites, Inc. is a Washington, D.C., corporation with a principal place of business at 910 17th Street NW #800, Washington, DC 20002.

37. Upon information and belief, Stat Office Solutions (also known as Stat International, a division of the Stat Organization) is a Delaware company with a principal place of business at 1201 N. Orange Street, Suite 700, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

38. This Court has subject matter jurisdiction under federal question jurisdiction (28 U.S.C. § 1331) because the Mailer Defendants violated the Lanham Act and USA Box knowingly aided and abetted those violations, which is ongoing. This court has supplemental jurisdiction over the California FAL and UCL claims under 28 U.S.C. § 1367 because the state law claim arises from the same nucleus of operative facts as the Lanham Act claim.

39. This Court has general personal jurisdiction over TRS because it is a California corporation. This Court has specific personal jurisdiction over the Defendants because each has minimum contacts with California. Each Mailer Defendant has purposefully directed its unsolicited offers to consumers in California and USA Box has directly enabled ITP, WTP, and ITR's offers sent to consumers in California. USA Box also purposefully directs its website to consumers in California to provide a mailbox and forwarding service in Florida. These activities are intentional acts expressly aimed at California consumers and are likely

to cause harm in California. Plaintiff's claims arose out of these activities and exercising jurisdiction over Defendant would not be unreasonable.

40. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL CLAIMS

### Plaintiff's Business

41. RAPC has clients for intellectual property services in all 50 states and more than 300 cities and towns across America. RAPC offers services including trademark preparation and prosecution, patent preparation and prosecution, copyright registration and counseling, international trademark and patent filings, and corporate formation and stock and equity structuring, etc.

42. RAPC's clients include individuals and small, midsize, and large businesses and organizations.  RAPC's trademark attorneys are qualified to practice before the United States Patent and Trademark Office ("USPTO"). Among other services, RAPC specializes in assisting its clients with obtaining and maintaining trademark and patent protection for their intellectual property rights.

### Defendants' Activities

43. Upon information and belief, the Mailer Defendants choose company names meant to appear as "official" as possible to elicit payments from the public for unnecessary services that duplicate what the USPTO and other government agencies do without charge. This includes using website addresses with the top level domains of ".org", ".us", and ".world" as part of the address to further cloak the private companies with the false appearance of an official governmental entity.

44. An appearance of being an official agency is furthered by using names that sound similar to official international and U.S. agencies like WIPO or EUIPO and the United States Patent and Trademark Office. The Mailer Defendants in this case use this same trick: ITP, WTP, ITR, WTMR (also marketed as World Trademark Register), ITR, GLOTRADE (also marketed as Global Trademarks Protection), Patent & Trademark Resource Center, Patent & Trademark Office, Patent & Trademark Bureau, U.S. Trademark Compliance

Office, USTM Corporation (also marketed as U.S. Trademark Trademark Assistance and USTM Information Services), Trademark Renewal Service, etc.[1]

45. Upon information and belief, the Mailer Defendants also manipulate their mailing addresses to further the illusion of an official agency. This includes using a U.S. address rather than a foreign address or not listing the city in the address.

A.   *ITP, WTP, and ITR*

46. ITP lists on its unsolicited offers an Internet website address of www.itp-service.com. A printout of the website homepage is attached as **Exhibit 6**.

47. WTP lists on its unsolicited offers an Internet website address of www.wtp-register.com. A printout of the website homepage is attached as **Exhibit 7**.

48. ITR lists on its unsolicited offers an Internet website address of www.itr-service.com. A printout of the website homepage is attached as **Exhibit 8**.

49.  ITP, WTP, and ITR all list foreign addresses on their websites—Croatia for ITP, and Poland for WTP and ITR; however, all provide the same Miami, Florida address in the unsolicited offers for where to send the checks—8345 NW 66 ST #2000, Miami, FL 33166-7896. In fact, ITP and WTP do not reference any other country or foreign address anywhere in the unsolicited offers. Examples of the ITP, WTP, and ITR unsolicited offers, redacted for client privacy, are attached as **Exhibits 9, 10, and 11**, respectively.

50. ITP, WTP, and ITR all use unsolicited offers that appear very similar. The unsolicited offers include some kind of reference number, an application date, and application number and a picture of the trademark. The application number is really just the serial number of the underlying trademark application to the USPTO. The bottom of the unsolicited offers lists a filing fee, additional tax, and a total filing fee, with a prominent box directing recipients to pay by check and where to send the check. ITR also includes directions on how to pay by wire transfer.

---

[1] Other cases have been brought in the Southern District of New York against similar companies that resulted in consent judgments. *See Leason Ellis LLP v. USA Trademark Enterprises, Inc. et. al*. (No. 12-cv-00620-ER); *Leason Ellis LLP v. Patent & Trademark Agency LLC* (No. 13-CV-2880-VB); *Leason Ellis LLP v. Patent & Trademark Association, Inc*. (No. 17-cv-05185-KMK).

51. The very bottom of the unsolicited offers describes in smaller, denser print that the recipient is purchasing the registration of the trademark in ITP, WTP, or ITR's private database. They charge between $1,340 to $1,380 for this service that, upon information and belief, has no real value. No where on the unsolicited offers does it mention that trademark applications are a matter of public record that can be searched and checked online or that when a trademark application is approved by the USPTO, it is published in the USPTO's public Official Gazette.

52. The EUIPO includes examples of unsolicited offers by ITP, WTP, and ITR in its warning to consumers. *See* https://euipo.europa.eu/ohimportal/en/misleading-invoices. The USPTO also includes an example of ITR's unsolicited offer in its warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

53. ITP and ITR state on their website "About Us" pages that the private database on each of their websites "includes only registered trademarks either in the form of a word or a logo/ an image/ a design;" however, both databases include brands that are NOT registered trademarks. Printouts of the website About Us pages are attached as **Exhibits 33 and 34**.

54. The WTP website states on its homepage, "Hence, There Is The WTP Database, Which Upon fee, Enables Users The Detailed Access To The Registered Patents And Trademarks List;" however, upon information and belief, the WTP database only includes one entry as of February 5, 2019 and it is not a registered trademark. The site promises users entry into the database of registered trademarks and patents upon paying the fee, but WTP does nothing to ensure the entries are registered or existing in any way.

55. The ITP, ITR, and WTP databases provide no value to consumers. There is no way to tell if any marks are registered or in what country or jurisdiction they are registered. The databases include applications that are only pending at the USPTO and attempts to convey that they have already been approved and are registered trademarks.

56. In their unsolicited offers, ITP, ITR, and WTP all included in small print at the bottom, that "the publication of the public *registration of your trademark* is the basis of our offer," which conveys a very specific legal meaning to recipients who are concerned about

protecting their trademark by either registering or publishing the registration of the trademarks. Neither is true for ITP, ITR, or WTP.

57. The marketing and sale of services by ITP, WTP, and ITR through the unsolicited offers and their websites are false and create false and misleading appearances of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

58. RAPC has received a total of over 1,100 unsolicited offers from ITP, WTP, and ITR in the past year, directed to both RAPC's clients and employees of the firm.

   *B.     WTMR*

59. WTMR lists on its unsolicited offers an Internet website address of www.wtmr.org. A printout of the website homepage is attached as **Exhibit 12**. A copy of one of WTMR's unsolicited offers, redacted for client privacy, is attached as **Exhibit 13**.

60. The USPTO includes an example of WTMR's unsolicited offer on its website as a warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

61. WTMR's unsolicited offers only reference a Washington, D.C. address. Its website also only references the Washington D.C. address; however, the IP address for its domain name, www.wtmr.org, is located in Hungary. Furthermore, to increase the appearance of legitimacy and authenticity, WTMR uses the top level domain .org for its website, rather than the typical commercial domain of .com.

62. WTMR also directs recipients to address the check to WTMR, LLC; however, it is not discernable whether WTMR registered as a limited liability company in Washington D.C.

63. The address provided by WTMR (1717 Pennsylvania Avenue NW, Ste 1025, Washington, DC 20006) is a virtual office rented from Servcorp. Upon information and belief, WTMR is not operated out of Washington D.C. and only uses that address for an appearance of legitimacy and authenticity while operating the entity from outside of the U.S., likely Hungary or some other location in Europe.

64. WTMR's unsolicited offers include a picture of the recipient's trademark image at the top, and immediately below, in the middle of the page, it states in large, bold print "**YOUR ACCOUNT INFORMATION**" and "**REGISTRATION FEE**."

65. WTMR directs recipients to pay $980 as a registration fee, with the overall format of the unsolicited offer constructed to appear as an invoice, including a due date, and telling recipients that "WE MUST RECEIVE PAYMENT BY THE DUE DATE."

66. In smaller type WTMR's unsolicited offer mentions that by sending a check the recipient will have his or her trademark listed in WTMR's publication, but nowhere does it mention that trademark applications are a matter of public record that can be searched and checked online or that when a trademark application is approved by the USPTO, it is published in the USPTO's public Official Gazette.

67. The WTMR unsolicited offers state in small print that  website references "register" or "registration" of customer's marks throughout the website, stating to customers that by purchasing their services, the customer's mark(s) will be registered and protected.

68. Upon information and belief the format of the unsolicited offer is deliberately constructed to deceive recipients into thinking the unsolicited offer is a bill so the recipient will send a check as a payment for something they think is already owed to protect a trademark.

69. Indeed, the appearance created is that the recipient's trademark is at risk if he or she does not pay the $980 registration fee. Immediately prior to stating that payment results in listing the trademark information in the World Trademark Register, the offer reads as follows: "The law considers a trademark to be a form of property. Your trademark is an important component of your successful business marketing strategy. Protecting your trademark for confusing similar names is your responsibility. The above mentioned data represents a sample of your trademark registration . . . ."

70. The WTMR website also states that WTMR's publication is an annually produced catalog of registered trademarks; however, upon information and belief, WTMR does not produce the catalog annually and it is not a catalog of registered trademarks.

71. The marketing and sale of services by WTMR through the unsolicited offers and its website is false and creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

72. The false promise of an annually produced catalog of only registered trademarks is also false.

73. RAPC has received over 40 unsolicited offers from WTMR in the past year, directed to both RAPC's clients and to individuals employed by RAPC.

   *C.    GLOTRADE*

74. GLOTRADE lists on its unsolicited offers an Internet website address of www.glotrade.world. A printout of the website homepage is attached as **Exhibit 14**. A copy of one of GLOTRADE's unsolicited offers, redacted for client privacy, is attached as **Exhibit 15**.

75. The USPTO also includes an example of GLOTRADE's unsolicited offer on its website as a warning to consumers.

76. *See* https://www.uspto.gov/trademarks-getting-started/caution- misleading-notices.

77. The website, www.glotrade.world, uses the top level domain of .world rather than the typical commercial domain of .com to advance the illusion that it is an official government entity or closely affiliated with one.

78. The unsolicited offer, directs recipients to send a check for payment to an address in Houston, Texas and another version directs payment to an address in New York City; however, upon information and belief, GLOTRADE is operating out of Czech Republic.

79. Both domestic addresses provided by GLOTRADE are for mail forwarding services. The New York address (244 Madison Ave, New York, NY 10016) is for a UPS location that states at "[t]he UPS Store Madison Ave, you'll get a real street address, package acceptance from all carriers and quick and easy access to your mail and deliveries." The mailbox service includes holding and forwarding mail.

80. Similarly, the Houston address (1321 Upland Drive, Suite 8441, Houston, TX 77043-4718) is the address of US Global Mail, a service used to provide a U.S. street

address to customers and allow them to receive mail at a U.S. address that can then be forwarded internationally.

81. Upon information and belief, GLOTRADE uses these domestic mailbox addresses to appear as though they have a physical location in the U.S. that is not a post office box and to hold and forward all U.S. mail to an international location. By doing so, GLOTRADE masks its true identity from people sending the checks and attempts to retain its anonymity and appearance of an official entity critical to protecting intellectual property rights.

82. Although the website is only available in English or Spanish, it states in the terms of service that the registered office of the company is in Brno, Czech Republic. A printout of the website terms of service is attached as **Exhibit 16**.

83. On the unsolicited offers, GLOTRADE includes a title of "Global Trademarks Protection" directly under its name to again project an appearance as an official entity that provides a critical service to protect intellectual property rights.

84. GLOTRADE also designed its mailer to look like an invoice. It includes information about the recipient's trademark registration number, lists some kind of "GLOTRADE USERNAME" and direct recipients to reference the username and send a check to a U.S. address, that despite its appearance is not a physical address, but an address to have the check redirected to an international location.

85. The GLOTRADE unsolicited offers provide an astonishing total due of $2,890, and directs recipients to detach the stub of and mail in with the check. The service that GLOTRADE actually provides for this amount is another publishing of the public registration; however GLOTRADE also includes one year of sending reports to the payor of other newly published trademark applications, informing the payor that he or she can comb through the reports to find any potentially conflicting brands himself or herself.

86. Nowhere does GLOTRADE's unsolicited offer mention that trademark applications are a matter of public record that can be searched and checked online or that when a trademark application is approved by the USPTO, it is published in the USPTO's public Official Gazette.

87. Instead the appearance created by the unsolicited offer is that a trademark owner needs GLOTRADE's services to protect the trademark rights.

88. Furthermore, in the unsolicited offer, in the only place describing the service being sold, GLOTRADE states that "WE OFFER OUR SIMILARITY SERVICE THAT PROTECTS YOUR TRADEMARK FROM COPYRIGHT INFRINGEMENT." This is a false statement because the service sold by GLOTRADE does not protect a trademark from copyright infringement.

89. Additionally, the unsolicited offer continues, stating "THEREFOR [sic] YOU WILL RECEIVE TIMELY REPORTS ON NEWLY PUBLISHED TRADEMARK APPLICATIONS IN KEY MARKETS TO UNCOVER POTENTIAL CONFLICTS WITH YOUR BRAND." This again is a false statement because, upon information and belief, GLOTRADE does not send out timely reports on newly published trademark applications in the recipients key markets and any report sent out by GLOTRADE does not provide recipients with protection promised by GLOTRADE.

90. The marketing and sale of services by GLOTRADE through the unsolicited offers and its website is false and creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

91. RAPC has received over 140 unsolicited offers from GLOTRADE in the past year, directed to both RAPC's clients and employees of the firm.

   D.    *Patent & Trademark Resource Center*

92. Patent & Trademark Resource Center LLC ("PTRC") uses a name very similar to the USPTO. In fact, Patent & Trademark Resource Center is the actual name of certain libraries across the United States that have been designated by the USPTO "to support the public with trademark and patent assistance."

93. *See* https://www.uspto.gov/learning-and-resources/support-centers/Patent-and-trademark-resource-centers-ptrcs. PTRC uses the exact same name as these USPTO designated resource centers to cause confusion and more easily obtain payments from unsuspecting victims for unnecessary services.

94. PTRC uses a top level domain of .us for its website, rather than the typical commercial domain of .com. Its address, as provided in its unsolicited offer, is an address to a virtual office in Bothell, Washington; however, just two years ago, PTRC was sending out the same mailers with an address in Yelm, Washington. The Yelm address is the same address shown on the bottom of a 2016 PTRC unsolicited offer that USPTO publishes on its website as a warning to the public about PTRC. *See* https://www.uspto.gov/sites/default/files/documents/Patent_and_ Trademark_Resource_Center_Redacted.pdf. A printout of this unsolicited offer is included as **Exhibit 17**. This address also matches the current address in PTRC's latest annual report, filed with the Washington Secretary of State in April 2018.

95. Suspiciously, the Yelm address is also listed as the physical address for PTRC's registered agent, American Corporate Services, Inc. which is California business specializing in "international tax planning. . . the registration of companies in the US, offshore companies . . . as well as additional services such as legalization of documents, etc." *See* https://usa-acs.com/. They also highlight that they have experienced Russian and Chinese speaking U.S. attorneys. A printout of American Corporate Services, Inc.'s homepage is included as **Exhibit 18**. Upon information and belief, American Corporate Services, Inc. is the registered agent for multiple other entities, managed by different individuals but with the same mobile home physical address for the entities.

96. Upon information and belief, despite the Bothell virtual address and Yelm mobile home address, PTRC is actually run from outside of the United States. The initial filing report for PTRC lists it as a foreign company, the only member manager of the LLC is Oleg Popko, who also lists himself as CEO, and his address is listed as Lastekodu 26-31, Talinn, Estonia.

97. Upon information and belief, PTRC uses these domestic addresses to appear as though they have a physical location in the U.S. By doing so, PTRC masks its true identity from people sending the checks and attempts to retain its anonymity and appearance of an official entity critical to protecting intellectual property rights.

98. The unsolicited offer that PTRC sends out is designed to look very similar to a government form, listing an official sounding form version at the top corner, such as "Form: Section 8" or "Form: 3.5 Years USA 1.1." Two copies of the unsolicited offers that RAPC received from PTRC, redacted for privacy, are included as **Exhibit 19**. The forms also include a "Case Id." or "Order" under the form name, prominent statements about the patent or trademark expiring, with a Section 8 Filing Fee starting at $850 for a trademark renewal or a Maintenance Fee of $1,450 to maintain the recipient's patent for three and a half years.

99. The USPTO includes an example of PTRC's unsolicited offer on its website as a warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

100.  Additionally, upon information and belief, PTRC is not a law firm; however, it is soliciting legal services and engaged in the practice of law. PTRC's unsolicited offers state that by paying the listed fee, the payor is granting PTRC a power of attorney to represent him or her in "filing the Patent Maintenance" for patents or to empower PTRC to represent the payor in  "filing the declaration concerning your trademark renewal" for trademarks.

101.  The marketing and sale of services by PTRC through the unsolicited offers and its website is false because it conveys to consumers that they will receive sufficient legal representation to protect their intellectual property and it creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

102.  Upon information and belief recipients have sent money to PTRC because the format of the unsolicited offer, the confusing official-sounding name of PTRC, and the domestic U.S. offices mislead the recipient into thinking either that they were getting legitimate legal services or that they were paying a bill that was owed to protect a patent or trademark.

103.  RAPC has received multiple unsolicited offers from PTRC in the past year, directed to employees of RAPC.

    *E.*    *Trademark Renewal Service*

104.     Trademark Renewal Service, Inc. ("TRS") lists a Washington, D.C. address on its mailer; however, the Washington DC Department of Consumer and Regulatory Affairs shows that it is a California entity and its status is Revoked. Likewise, in California, the status shows as suspended on the Secretary of State's website. There have been no filings since 1999.

105.     Upon information and belief, ("TRS") is also known as Compliance Filings, Inc., which has a website at http://www.compliancefilings.com and lists TRS as one of the services at http://www.compliancefilings.com/trs.html. A printout of the homepage and TRS specific page is included as **Exhibit 20**.

106.     Upon information and belief, TRS is also known by alternate names of Corporate Compliance Center, United States Patent Renewal Services, Fictitious Business Name Renewal Service, and Renewal Services, Inc., with several complaints of fraud and deception. A print out of the Better Business Bureau's page giving these companies an F-rating and posting a fraudulent warning at the top of the page is included as **Exhibit 21**.

107.     The TRS unsolicited offers include TRS' name in large bold letters at the top with a Washington, D.C. address directly below the name. The next largest type is "**TRADEMARK CANCELLATION ADVISORY**" and demanding payment by specific date to avoid "potential late fees," noting that failure to act will result in cancellation and loss of exclusive use of the mark.

108.     The design of TRS' unsolicited offers is formatted to mimic a bill and government form, including a bottom portion to tear off and return with a check or credit card information to pay the $250 and official looking form names and labels. However, upon information and belief, the actual service being sold by TRS is only to receive documentation for the recipient to file on his or her own to renew the trademark. A copy of one of the TRS unsolicited offers that RAPC received, redacted for privacy, is included as **Exhibit 22**.

109.     The USPTO also includes an example of TRS' unsolicited offer on its website as a warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-

misleading-notices.

110.   TRS' unsolicited offers also state that their service is to assist "trademark owners in timely complying with all steps necessary to renew trademarks and avoid losing the right to the exclusive use of their trademarks."

111.   Upon information and belief, TRS is not a law firm; however, it is soliciting legal services and engaged in the practice of law by offering and presumably engaging in or advising on "all steps necessary to renew trademarks" and avoid losing trademark rights.

112.   The marketing and sale of services by TRS through the unsolicited offers is false because it cannot provide the legal services necessary for renewal and trademark protection and  it creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

113.   Upon information and belief recipients have sent money to TRS because the format of the unsolicited offer, the confusing official-sounding name of TRS, and the domestic U.S. offices deceived the recipient into thinking either that they were getting legitimate legal services or that they were paying a bill that was owed to protect a patent or trademark.

114.   RAPC has received multiple unsolicited offers from TRS in the past year, directed to employees of RAPC.

   F.   *Patent & Trademark Office LLC*

115.   Patent & Trademark Office LLC ("PTO"), uses a name almost identical to the USPTO. PTO has one website at www.patentandtrademarkoffice.org, which again uses the .org top level domain, rather than the typical .com commercial domain. PTO also has another website at www.ptoffice.us, again trying to appear as an official United States entity.

116.   Additionally, the websites claim that the company is headquartered in New York City, but one version of its unsolicited offer directs recipients to send the signed form to an address in Jersey City, New Jersey. Additionally, the IP Address for their website www.ptoffice.us, states that the website is located in Latvia. Printouts of PTO's websites, along with a printout of the lookup information for www.ptoffice.us, are included as **Exhibit**

**23**.

117.   Upon information and belief all of PTO's United States addresses are merely virtual offices or shared offices rented by Regus PLC.

118.   PTO also shows an F-rating by the Better Business Bureau and lists a complaint by a customer who sent PTO money before realizing it was a scam and was unable to get the money back. A print out of the Better Business Bureau's pages is included as **Exhibit 24**.

119.   PTO's unsolicited offer is designed to look very similar to a government form, with its name and .org website prominent on the page, and directing recipients to "[s]ign and return this document in order to renew your trademark." A copy of one of the PTO unsolicited offers that RAPC received, redacted for privacy, is included as **Exhibit 25**. The unsolicited offer states that the "renewal fee" is $890 for one class and $295 for each additional class.

120.   The USPTO includes an example of PTO's unsolicited offer on its website as a warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

121.   Upon information and belief, PTO is not a law firm; however, it is soliciting legal services and engaged in the practice of law by offering and presumably engaging in or advising on all of the steps necessary to renew trademarks. PTO's unsolicited offers state that by paying the listed fee, the payor is empowering PTO "to renew the trademark state above on your behalf."

122.   The marketing and sale of services by PTO through the unsolicited offers and its website is false because it conveys to consumers that they will receive sufficient legal representation to protect their trademarks and it creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

123.   Upon information and belief recipients have sent money to PTO because the format of the unsolicited offer, the confusing official-sounding name of PTO, and the domestic U.S. offices deceived the recipient into thinking either that they were getting

legitimate legal services or that they were paying a bill that was owed to protect a patent or trademark.

124.   RAPC has received multiple unsolicited offers from PTO in the past year, directed to employees of RAPC.

G.   *Patent & Trademark Bureau*

125.   Another Mailer Defendant with an official looking name, Patent & Trademark Bureau ("PTB") follows the same tactics as PTO—a name that appears official, uses .us as the top level domain for its website (www.patentandtrademarkbureau.us) rather than .com, provides a "headquarters" in New York City and also another address in its mailer (Philadelphia), and an F-rating from the Better Business Bureau with a complaint by someone who lost money. A print out of the Better Business Bureau's pages is included as **Exhibit 26**.

126.   Upon information and belief, both of PTB's addresses in New York City and Philadelphia are also addresses for Regus PLC virtual or shared offices. The PTB website is also not hosted in the U.S., the IP address for its domain name is located in Russia. Upon information and belief, despite the domestic address, PTB is actually run from outside of the United States. A printout of PTB's website is included as **Exhibit 27**.

127.   Upon information and belief, PTB uses these domestic addresses to appear as though they have a physical location in the U.S. By doing so, PTB masks its true identity from people sending money and attempts to retain its anonymity and appearance of an official entity critical to protecting intellectual property rights.

128.   PTB's unsolicited offer is designed to look very similar to a government form, with its name and .us website prominent on the page, and directing recipients to "[s]ign and return this document in order to renew your trademark." A copy of one of the PTB unsolicited offers that RAPC received is included as **Exhibit 28**. The unsolicited offer states that the "renewal fee" is $925 for one class and $325 for each additional class.

129.   The EUIPO includes an example of an unsolicited offers by PTB in its warning to consumers. *See*  https://euipo.europa.eu/ohimportal/en/misleading-invoices. The USPTO

also includes an example of PTB's unsolicited offer in its warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

130.    Upon information and belief, PTB is not a law firm; however, it is soliciting legal services and engaged in the practice of law by offering and presumably engaging in or advising on all of the steps necessary to renew trademarks. PTB's unsolicited offers state that by paying the listed fee, the payor is empowering PTB "to renew the trademark state above on your behalf."

131.    The marketing and sale of services by PTB through the unsolicited offers and its website is false because it conveys to consumers that they will receive sufficient legal representation to protect their trademarks and it creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

132.    Upon information and belief recipients have sent money to PTB because the format of the unsolicited offer, the confusing official-sounding name of PTB, and the domestic U.S. offices deceived the recipient into thinking either that they were getting legitimate legal services or that they were paying a bill that was owed to protect a patent or trademark.

133.    RAPC has received multiple unsolicited offers from PTB in the past year, directed to employees of RAPC.

*H.      U.S. Trademark Compliance Office*

134.    U.S. Trademark Compliance Office ("USTCO") is another entity using a carefully chosen name to appear as an official U.S. entity. USTCO also makes it difficult for anyone to find out more information about it.

135.    The USTCO unsolicited offer sent to consumers is an official looking invoice directing recipients to send checks for their trademark to an address in Delaware, but no website is provided. On the Delaware Secretary of State website, there is also no information publicly available for free about any of the officers or directors or even a principal place of business.

136.    The USTCO unsolicited offer discusses the USPTO and Customs and Border Patrol, with some partial text of "Trademark Act § 1063" included with references to the USPTO and USTCO blended into the same paragraph. Although, buried at the bottom of the page of small text is a disclaimer that USTCO is not affiliated with the USPTO, the general appearance of the mailer is that of an invoice from an official sounding and looking U.S. compliance office.

137.    USTCO's unsolicited offer is designed to look very similar to a government form and bill. The top of the unsolicited offer includes "IMPORTANT NOTIFICATION REGARDING YOUR FEDERAL TRADEMARK" next to a large arrow pointing to information about the trademark, and a "PROCESSING FEE" of $495. It also includes a bottom "stub" to tear off and return with the payment. A copy of one of the USTCO unsolicited offers that RAPC received, redacted for privacy, is included as **Exhibit 29**. The unsolicited offer states that the "renewal fee" is $925 for one class and $325 for each additional class.

138.    The USPTO includes an example of USTCO's unsolicited offer on its website as a warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices.

139.    Additionally, upon information and belief, USTCO is not a law firm; however, it is soliciting legal services and engaged in the practice of law. USTCO's unsolicited offers state that by paying the listed fee, USTCO will send the payor "electronic notice(s) should infringement pertaining to your IP occur" and that USTCO will "advise you regarding possible third party infringement(s)."

140.    Upon information belief this is false because USTCO will not send notices when infringement to the payor's intellectual property occurs and will not advise regarding possible infringement.

141.    Additionally USTCO's attempts to do so is an authorized practice of law that provides payors with a false assurance that their intellectual property will be protected.

142.    The marketing and sale of services by USTCO through the unsolicited offers is

false because it conveys to consumers that they will receive sufficient legal representation to protect their intellectual property and it creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

143.   Upon information and belief recipients have sent money to USTCO because the format of the unsolicited offer, the confusing official-sounding name of USTCO, and the domestic U.S. offices mislead the recipient into thinking either that they were getting legitimate legal services or that they were paying a bill that was owed to protect a patent or trademark.

144.   RAPC has received multiple unsolicited offers from USTCO in the past year, directed to RAPC's customers.

   *I.     USTM Corporation*

145.   USTM Corporation ("USTM") is another entity using a carefully chosen name to appear as an official U.S. entity. It has sent out unsolicited offers under the name USTM, Information Services and US Trademark, Trademark Assistance. The latest received mailers now omit references to USTM's website and only include a post office box number with a zip code, avoiding specifically identifying the city and state (Idaho Falls, Idaho). This contributes to making the unsolicited offer appear more official.

146.   The website, if recipients are able to find it, includes .us within the website address to appear more official—www.ustm.us.com. A printout of USTM's website homepage is included as **Exhibit 30**.

147.   Upon information and belief, the two directors of USTM were also both involved with a California entity that had actions brought against it by the State of California and the Federal Trade Commission ("FTC") for false and misleading marketing of debt services.

148.   Upon information and belief, the FTC action resulted in an $8,000,0000 judgement against one of USTM's directors (John "Jack" Briggs) and a permanent ban from him ever participating in any type of debt relief services again. That order also required specific monitoring of compliance steps for sales personnel of any company for which Mr.

Briggs directly or indirectly manages or controls and where it uses a website to sell its services or assist others. A copy of the FTC judgment is included as **Exhibit 31**.

149.    USTM's unsolicited offer is designed to look very similar to a government form and bill. It includes alarming language about being an important advisory regarding the recipient's trademark and directing the recipient to contact USTM for more information about the trademark and "PLEASE HAVE THE INCIDENT NUMBER AVAILABLE." A copy of one of the USTM unsolicited offers that RAPC received, redacted for privacy, is included as **Exhibit 32**.

150.    The USPTO includes an example of USTM's unsolicited offer on its website as a warning to consumers. *See* https://www.uspto.gov/trademarks-getting-started/caution-misleading-notices (referring to USTM as USTM Information Services).

151.    Additionally, upon information and belief, USTM is not a law firm; however, it is soliciting legal services and engaged in the practice of law. USTM's unsolicited offers solicit recipients to call for more information where USTM then provides legal advice on trademark status and procedures required to protect the caller's trademark.

152.    Additionally, the USTM unsolicited offer includes the statement that "ANOTHER COMPANY HAS FILED AN APPLICATION TO REGISTER A SIMILAR NAME, CLAIMING THE EXCLUSIVE RIGHT TO USE THE NAME." Upon information and belief, this statement is false and the unsolicited offer was sent with this statement even though there was no application for a similar name, claiming the exclusive right to use the name. This is merely a false statement meant to get recipients to call in and be sold unnecessary services and legal services by non-attorneys.

153.    The marketing and sale of services by USTM through the unsolicited offers and its website is false because it conveys to consumers that they will receive sufficient legal representation to protect their intellectual property and it creates a false and misleading appearance of equivalence with the legitimate legal services provided by trademark practitioners, such as Plaintiff RAPC.

154.    Upon information and belief recipients have sent money to USTM because the format of the unsolicited offer, the confusing official-sounding name of USTM, and the domestic U.S. offices mislead the recipient into thinking either that they were getting legitimate legal services or that they were paying a bill that was owed to protect a patent or trademark.

155.    RAPC has received multiple unsolicited offers from USTM in the past year, directed to employees of RAPC and its customers.

> J.      USA Box

156.    Upon information and belief, USA Box works with ITP, WTP, and ITR to provide them with a domestic Florida address to aid and abet the deception on consumers while actively masking the true foreign origin of ITP, WTP, and ITR.

157.    Upon information and belief USA Box also forwards the mail received in Florida to other foreign addresses for ITP, WTP, and ITR.

158.    Upon information and belief, if these companies used their foreign addresses rather than the domestic address supplied by USA Box, then there would be significantly fewer people, if any, who would be deceived and send ITP, WTP, or ITR money.

159.    Upon information and belief, USA Box has received complaints about ITP, WTP, and ITR using USA Box's address and services to execute their scams, but USA Box continues to provide the necessary assistance to keep the scam going.

> K.      Siglo-21, Inc.

160.    Upon information and belief, Siglo-21, Inc. owns and operates a UPS Store in New York City at 244 Madison Ave, New York, NY 10016.

161.    Upon information and belief, Siglo-21, Inc. through its UPS Store, provides GLOTRADE with a domestic New York City address to aid and abet the deception on consumers while actively masking the true foreign origin of GLOTRADE.

162.    Upon information and belief Siglo-21, Inc. also forwards the mail received in New York City to a foreign address or addresses for GLOTRADE.

163.    Upon information and the mail collected and forwarded to GLOTRADE in

1   Hungary by Siglo-21, Inc. includes checks for thousands of dollars from deceived
2   consumers in the United States.

3   164.   Upon information and belief, if GLOTRADE used its foreign addresses rather
4   than the domestic address supplied by Siglo-21, Inc., then there would be significantly fewer
5   people, if any, who would be deceived and send GLOTRADE money.

6   165.   Upon information and belief, Siglo-21, Inc. has received complaints about
7   GLOTRADE using Siglo-21, Inc's address and services to execute its scams, but Siglo-21,
8   Inc. continues to provide the necessary assistance to keep the scam going.

9       *L.      U.S. Global Mail, Inc.*

10  166.   Upon information and belief, U.S. Global Mail, Inc. ("USGM"), provides
11  GLOTRADE with a domestic Houston, Texas address to aid and abet the deception on
12  consumers while actively masking the true foreign origin of GLOTRADE.

13  167.   Upon information and belief USGM also forwards the mail received in Houston
14  to a foreign address or addresses for GLOTRADE.

15  168.   Upon information and the mail collected and forwarded to GLOTRADE in
16  Hungary by USGM includes checks for thousands of dollars from deceived consumers in
17  the United States.

18  169.   Upon information and belief, if GLOTRADE used its foreign addresses rather
19  than the domestic address supplied by USGM, then there would be significantly fewer
20  people, if any, who would be deceived and send GLOTRADE money.

21  170.   Upon information and belief, USGM has received complaints about
22  GLOTRADE using USGM's address and services to execute its scams, but USGM
23  continues to provide the necessary assistance to keep the scam going.

24      *M.      Servcorp Washington LLC*

25  171.   Upon information and belief, Servcorp Washington LLC ("Servcorp"), provides
26  WTMR with an address and mail service in Washington, D.C. to aid and abet the deception
27  on consumers while actively masking the true origin of WTMR.

28  172.   Upon information and belief Servcorp also forwards the mail received in

Washington, D.C. to a different address or addresses for WTMR.

173.   Upon information and the mail collected and forwarded to WTMR by Servcorp includes checks for thousands of dollars from deceived consumers in the United States.

174.   Upon information and belief, if WTMR used its true address rather than the Washington, D.C. address supplied by Servcorp's services, then there would be significantly fewer people, if any, who would be deceived and send WTMR money.

175.   Upon information and belief, Servcorp has received complaints about WTMR using Servcorp's address and services to execute its scams, but Servcorp continues to provide the necessary assistance to keep the scam going.

   N.   *Premier Office Centers, LLC*

176.   Upon information and belief, Premier Office Centers, LLC dba Premier Business Centers ("PBC"), provides PTRC with an address and mail service in Washington state to aid and abet the deception on consumers while actively masking the true origin of PTRC.

177.   Upon information and belief PBC also forwards the mail received in Washington, to a different address or addresses for PTRC.

178.   Upon information and the mail collected and forwarded to PTRC by PBC includes checks for thousands of dollars from deceived consumers in the United States.

179.   Upon information and belief, if PTRC used its true address rather than the address supplied by PBC's services, then there would be significantly fewer people, if any, who would be deceived and send PTRC money.

180.   Upon information and belief, PBC has received complaints about PTRC using PBC's address and services to execute its scams, but PBC continues to provide the necessary assistance to keep the scam going.

   O.   *Regus Management Group, LLC*

181.   Upon information and belief, Regus Management Group, LLC ("Regus"), provides PTO and PTB with domestic addresses in New York, New Jersey, and Pennsylvania and with and mail collection and forwarding services to aid and abet the deception on consumers while actively masking the true foreign origin of PTO and PTB.

182.    Regus has provided PTO with addresses and services at  299 Park Avenue, 6th Floor, New York, New York 10171, 101 Hudson Street, Suite 2100, Jersey City, New Jersey 07302, and 387 Park Ave. S FL 5, New York, NY 10016-8810.

183.    Regus has provided PTB with addresses at 1500 Market Street, 12th Floor, East Tower, Philadelphia, Pennsylvania 19102 and 230 Park Avenue, 3rd Floor West, Helmsley Building, New York, New York 10169.

184.    Upon information and belief Regus also forwards the mail received in New York, New Jersey, and Pennsylvania to foreign addresses for PTO and PTB.

185.    Upon information and the mail collected and forwarded to PTO and PTB by Regus includes checks for thousands of dollars from deceived consumers in the United States.

186.    Upon information and belief, if PTO and PTB used their foreign addresses rather than the domestic addresses supplied by Regus, then there would be significantly fewer people, if any, who would be deceived and send PTO and PTB money.

187.    Upon information and belief, Regus has received complaints about PTO and PTB using Regus' addresses and services to execute their scams, but Regus continues to provide the necessary assistance to keep the scams going.

 P.     *Lawyers' Choice Suites, Inc.*

188.    Upon information and belief, Lawyers' Choice Suites, Inc. ("LCS"), provides TRS with an address and mail service in Washington, D.C. to aid and abet the deception on consumers while actively masking the true origin of TRS.

189.    Upon information and belief LCS also forwards the mail received in Washington, D.C., to a different address or addresses for TRS.

190.    Upon information and the mail collected and forwarded to TRS by LCS includes checks for thousands of dollars from deceived consumers in the United States.

191.    Upon information and belief, if TRS used its true address rather than the address supplied by LCS' services, then there would be significantly fewer people, if any, who would be deceived and send TRS money.

192.    Upon information and belief, LCS has received complaints about TRS using LCS' address and services to execute its scams, but LCS continues to provide the necessary assistance to keep the scam going.

Q.      *Stat Office Solutions*

193.    Upon information and belief, Stat Office Solutions ("SOS"), provides USTCO with an address and mail service in Delaware state to aid and abet the deception on consumers while actively masking the true origin of USTCO.

194.    Upon information and belief PBC also forwards the mail received in Washington, to a different address or addresses for USTCO.

195.    Upon information and the mail collected and forwarded to USTCO by SOS includes checks for thousands of dollars from deceived consumers in the United States.

196.    Upon information and belief, if USTCO used its true address rather than the address supplied by SOS' services, then there would be significantly fewer people, if any, who would be deceived and send USTCO money.

197.    Upon information and belief, SOS has received complaints about USTCO using SOS' address and services to execute its scams, but SOS continues to provide the necessary assistance to keep the scam going.

R.      *Harm to Plaintiff*

198.    The actions of the Mailer Defendants amount to unfair competition because they deceptively divert significant business from trademark owners, who have limited funds to protect their intellectual property and would otherwise have engaged RAPC's services.

199.    RAPC has received inquiries from its clients confused about the unsolicited actions by the Mailer Defendants and worried that RAPC's services to the clients were somehow deficient.

200.    The unsolicited offers by Mailer Defendants cost RAPC valuable time and expenses to investigate the facts to appropriately advise its clients.

201.    Upon information and belief, each of the Mailer Defendants is a scam enterprise structured to protect the anonymity of the beneficiary owners and that do not provide any

service to consumers that is commensurate with the costs.

202.    The solicitation activities by Mailer Defendants have damaged RAPC and its clients and will continue to do so unless Mailer Defendants are otherwise restrained.

**FIRST CLAIM FOR RELIEF**
FALSE ADVERTISING AND UNFAIR COMPETITION
THE LANHAM ACT, 15 U.S.C. § 1125(a)
(Against each of the Mailer Defendants and Logistics Enablers)

203.     RAPC repeats each and every allegations contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth herein.

*Mailer Defendants*

204.    Each of the Mailer Defendants violated 15 U.S.C. § 1125(a) by making false statements in commercial speech as alleged above.

205.    The statements were made in connection with the services offered by the Mailer Defendants. The statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, quality, origin, necessity, and/or affiliation of Mailer Defendants' services.

206.    The Mailer Defendants publicly disseminated the unsolicited offers to RAPC and consumers in California. The unsolicited offers contain commercial speech, as described above, that is either literally false or at least likely to deceive or confuse consumers.

207.    The Mailer Defendants' false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to RAPC and its clients for which there is no adequate remedy at law.

208.    In addition, as a result of the Mailer Defendants' false and misleading advertisements that have been publicly distributed with , RAPC has been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages.

209.    Upon information and belief RAPC's clients have been actually deceived and have been harmed by sending money to the Mailer Defendants because the format of unsolicited offers, the confusing official-sounding names of the Mailer Defendants, and the

domestic U.S. offices led RAPC clients into thinking either that they were getting legitimate legal services or that they were paying a bill that they owed to protect a patent or trademark.

210. Furthermore, the Mailer Defendants have been unjustly enriched at the expense of RAPC and its clients as a consequence of the Mailer Defendant's false advertising. Accordingly, RAPC is entitled to injunctive relief and to recover three times the damages sustained by RAPC, enhanced profits and costs, as well as the Mailer Defendant's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

211. The Mailer Defendants' unsolicited offers above were mailed or otherwise made available to the public at least on, or earlier than, February 5, 2019 and continued onward through the filing of this complaint.

212. The Mailer Defendants' unsolicited offers contain commercial speech that is either literally false or at least likely to confuse or deceive consumers.

*Logistics Enablers - Aiding and Abetting*

213. The Logistics Enablers provide ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO with domestic addresses in the United States which enables them to further their false advertising and unfair competition scheme against California and other United States consumers.

214. Upon information and belief, the Logistics Enablers have each received complaints about the unlawful actions of ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO but continue to actively provide each with a mailbox address and forward money received at that address to a different address.

215. The Logistics Enablers' actions provide substantial assistance to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO and amounts to a substantial factor in causing harm to RAPC and its clients.

216. Upon information and belief, without the domestic addresses provided by the Logistics Enablers to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, which they use to hide their foreign origins from recipients of the unsolicited offers and to appear associated with the U.S. Government, ITP, WTP, ITR, GLOTRADE, WTMR,

PTRC, PTO, PTB, TRS, and USTCO would receive substantially less money from unsuspecting consumers ensnared by the scheme.

217.    As a result of the Logistics Enablers' wrongful acts, Plaintiff has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiff but taken away by ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO as a result of the Logistics Enablers' substantial assistance.

218.    Plaintiff seeks an order of this Court that preliminarily and permanently enjoins the Logistics Enablers from continuing to engage in the unlawful and unfair acts or practices set forth herein.

## SECOND CLAIM FOR RELIEF
### CALIFORNIA FALSE & MISLEADING ADVERTISING
### CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*
(Against each of the Mailer Defendants and Logistics Enablers)

219.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

*Mailer Defendants*

220.    Each of the Mailer Defendants' advertisements is false, misleading, and untrue, as further described in this Complaint.

221.    Each of the Mailer Defendants' advertisements is likely to and has deceived consumers. Consumers have purchased the Mailer Defendants' services instead of RAPC's services as a result of the deception.

222.    RAPC has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the Mailer Defendants, increased advertising costs and loss of valuable business opportunities, all of which belonged to or vested to RAPC but were taken away by the Mailer Defendants as a result of their wrongful acts.

223.   The Mailer Defendants have been unjustly enriched through their false and misleading advertising.

224.   If the Mailer Defendants are not preliminarily or permanently enjoined, they will continue to derive revenue, profits, market share and sales from RAPC by wrongful acts. Unless restrained by this court, the Mailer Defendants will cause additional injury to RAPC for which RAPC has no adequate remedy at law.

225.   RAPC seeks an order of this Court under California Business & Professions Code § 17500 to preliminarily and permanently enjoin the Mailer Defendants from continuing to engage in the false and misleading advertising set forth herein.

*Logistics Enablers - Aiding and Abetting*

226.   The Logistics Enablers provide ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO with domestic addresses in the United States which enables them to further their false advertising and unfair competition scheme against California and other United States consumers.

227.   Upon information and belief, the Logistics Enablers have each received complaints about the unlawful actions of ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO but continue to actively provide each with a mailbox address and forward money received at that address to a different address.

228.   The Logistics Enablers' actions provide substantial assistance to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO and amounts to a substantial factor in causing harm to RAPC and its clients.

229.   Upon information and belief, without the domestic addresses provided by the Logistics Enablers to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, which they use to hide their foreign origins from recipients of the unsolicited offers and to appear associated with the U.S. Government, ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO would receive substantially less money from unsuspecting consumers ensnared by the scheme.

230.   As a result of the Logistics Enablers' wrongful acts, Plaintiff has suffered and

will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiff but taken away by ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO as a result of the Logistics Enablers' substantial assistance.

231.    Plaintiff seeks an order of this Court that preliminarily and permanently enjoins the Logistics Enablers from continuing to engage in the unlawful and unfair acts or practices set forth herein.

**THIRD CLAIM FOR RELIEF**
CALIFORNIA UNFAIR COMPETITION IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
(Against each of the Mailer Defendants and Logistics Enablers)

232.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

*Mailer Defendants*

233.    Plaintiff has standing because it has suffered injury in fact and lost money, including diverted sales to the Mailer Defendants, lost revenue, loss of market share, reduced asset value, and increased advertising costs.

234.    Each of the Mailer Defendants violated the unlawful prong of UCL because:

a.   Each of the Mailer Defendants violates Cal. Bus. & Prof. Code § 17500 et seq. as alleged *supra.*

b.   PTRC, PTB, PTO, USTCO, USTM, and TRS violate  Cal Bus. & Prof. Code § 6125 which provides that "[n]o person shall practice law in California unless the person is an active member of the State Bar."

235.    PTRC, PTB, PTO, USTCO, USTM, and TRS violated the unfair prong of UCL because of, and not limited to, the following:

a.   It is unfair to the competition in the practice of law if PTRC, PTB, PTO, USTCO, USTM, and TRS are able to offer legal services by violating state laws, federal

regulations and California ethics rules without being punished, while the vast majority of trademark attorneys and legal technology companies, including Plaintiff, abide by the laws, federal regulations and California ethics rules.

b. The consumer injury caused by PTRC, PTB, PTO, USTCO, USTM, and TRS violating the state laws, federal regulations and ethics rules is substantial. As these laws, regulations and ethics rules regulate non-lawyers practicing law, they are there to protect the interests of the public at large. When they are violated by PTRC, PTB, PTO, USTCO, USTM, and TRS, consumers become susceptible to the harm of bad legal advice given by non-attorneys whose independent judgment may be insufficient and not bound to the same ethical obligations. The contract for legal services between consumers and PTRC, PTB, PTO, USTCO, USTM, and TRS may be voided by the operation of law. The public interest is greatly harmed.

c. Providing legal advice to clients by the means of violating state laws, federal regulations and ethics rules offers no countervailing benefits to consumers or competition.

d. Consumers themselves are unable to reasonably avoid the injury because reasonable consumers are not aware of these laws, regulations and ethics rules and are not aware that they are being harmed or will be harmed.

236.   Each of the Mailer Defendants also violated the unfair prong of UCL because of, and not limited to, the following:

a. It is unfair to the competition in the practice of trademark and patent law for the trademark defendandants to send out their unsolicited offers with the entity names, addresses, language, and format of the offers purposefully constructed, as alleged above, to convey an official government connection and/or perception of incurred debt to deceive consumers into sending money.

b. Furthermore, the consumer injury is substantial, because even if the consumer is able to get any services at all in exchange for a fee, those services are unnecessary

for the purpose being advertised, protection of intellectual property, and not nearly commensurate with the amount of fee being paid.

c. Consumers themselves are unable reasonably avoid the injury because reasonable consumers are not aware of the trademark and patent law requirements, laws, regulations and are not aware that they are being harmed or will be harmed.

237.   The Mailer Defendants prevented competition from Plaintiffs by unfairly gaining potential clients through illegal solicitation and misleading advertisements. But-for their unlawful and unfair competition, many of these potential clients would have otherwise gone to Plaintiff.

238.   The Mailer Defendants' conduct of unlawful and unfair competition proximately caused Plaintiff injury. The Mailer Defendants advertise directly to trademark owners and applicants. Thus, the Mailer Defendants directly compete (unfairly) with Plaintiff.  If the Mailer Defendants did not engage in the alleged unlawful solicitations and PTRC, PTB, PTO, USTCO, USTM, and TRS in the unauthorized practice of law, they would not have unfairly competed with Plaintiffs. Therefore, the Mailer Defendants conduct of unfair competition took away potential sales belonging to Plaintiff and proximately caused injury to Plaintiff, the intellectual property law market, and consumers.

239.   As a result of the Mailer Defendants' wrongful acts, Plaintiff has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the Mailer Defendants, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiff but taken away by the Mailer Defendants as a result of their wrongful acts.

240.   Plaintiff seeks an order of this Court under California Business & Professions Code § 17200 that preliminarily and permanently enjoins the Mailer Defendants from continuing to engage in the unlawful and unfair acts or practices set forth herein.

*Logistics Enablers - Aiding and Abetting*

241.   The Logistics Enablers provide ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO with domestic addresses in the United States which enables

them to further their false advertising and unfair competition scheme against California and other United States consumers.

242.   Upon information and belief, the Logistics Enablers have each received complaints about the unlawful actions of ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO but continue to actively provide each with a mailbox address and forward money received at that address to a different address.

243.   The Logistics Enablers' actions provide substantial assistance to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO and amounts to a substantial factor in causing harm to RAPC and its clients.

244.   Upon information and belief, without the domestic addresses provided by the Logistics Enablers to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, which they use to hide their foreign origins from recipients of the unsolicited offers and to appear associated with the U.S. Government, ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO would receive substantially less money from unsuspecting consumers ensnared by the scheme.

245.   As a result of the Logistics Enablers' wrongful acts, Plaintiff has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiff but taken away by ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO as a result of the Logistics Enablers' substantial assistance.

246.   Plaintiff seeks an order of this Court that preliminarily and permanently enjoins the Logistics Enablers from continuing to engage in the unlawful and unfair acts or practices set forth herein.

### FOURTH CLAIM FOR RELIEF
INTENTIONAL INTERFERENCE WITH PROSPECTIVE
ECONOMIC ADVANTAGE

(Against each of the Mailer Defendants and Logistics Enablers)

247.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

*Mailer Defendants*

248.   Plaintiff has standing because it has suffered injury in fact and lost money, including diverted sales to the Mailer Defendants, lost revenue, loss of market share, reduced asset value, and increased advertising costs.

249.   Plaintiff has an economic and contractual relationship with all of its clients, which also is likely to continue to provide continued future economic benefit to RAPC as the clients seek repeat and additional services.

250.   RAPC is listed as the filing correspondent for its clients in the USPTO records of the clients' patents and trademark registrations.

251.   Upon information and belief, the Mailer Defendants intentionally mine the USPTO data to obtain information about the trademark owners and applicants before sending unsolicited offers to the unsuspecting recipients, which include RAPC and its clients.

252.   The Mailer Defendants are aware, from the USPTO public data, that RAPC represents its clients in trademark and patent matters and knew or reasonably should have known that there is an attorney-client relationship between RAPC and its clients to whom the Mailer Defendants sent solicitations for trademark and patent services.

253.   By directing the unsolicited offers to RAPC's clients, the Mailer Defendants have harmed the relationship between RAPC and its clients who receive unsolicited offers.

254.   As a result of the Mailer Defendants' wrongful acts, Plaintiff has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the Mailer Defendants, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiff but taken away by the Mailer Defendants as a result of their wrongful acts.

255.   Plaintiff seeks an order of this Court that preliminarily and permanently enjoins the Mailer Defendants from continuing to engage in the unlawful and unfair acts or practices

set forth herein.

*Logistics Enablers - Aiding and Abetting*

256.    The Logistics Enablers provide ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO with domestic addresses in the United States which enables them to further their false advertising and unfair competition scheme against California and other United States consumers.

257.    Upon information and belief, the Logistics Enablers have each received complaints about the unlawful actions of ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO but continue to actively provide each with a mailbox address and forward money received at that address to a different address.

258.    The Logistics Enablers' actions provide substantial assistance to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO and amounts to a substantial factor in causing harm to RAPC and its clients.

259.    Upon information and belief, without the domestic addresses provided by the Logistics Enablers to ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, which they use to hide their foreign origins from recipients of the unsolicited offers and to appear associated with the U.S. Government, ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO would receive substantially less money from unsuspecting consumers ensnared by the scheme.

260.    As a result of the Logistics Enablers' wrongful acts, Plaintiff has suffered and will continue to suffer loss of revenue, loss of profits, loss of market share, reduced asset value, diverted sales to the ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO, increased advertising costs and loss of valuable business opportunities, all belonging to or vesting to Plaintiff but taken away by ITP, WTP, ITR, GLOTRADE, WTMR, PTRC, PTO, PTB, TRS, and USTCO as a result of the Logistics Enablers' substantial assistance.

261.    Plaintiff seeks an order of this Court that preliminarily and permanently enjoins the Logistics Enablers from continuing to engage in the unlawful and unfair acts or practices

set forth herein.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

262.    Enter judgment against Defendants;

263.    Award RAPC all available damages against Defendants in an amount to be proven at trial;

264.    Declare this case as an exceptional case under 15 U.S.C. § 1117(a);

265.    Award Plaintiff its costs and expenses of this action against Defendants, including its reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

266.    Award Plaintiff compensatory and punitive damages if available;

267.    Award Plaintiff pre- and post-judgment interest at the applicable rates on all amounts awarded;

268.    Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint against Defendants and all related entities, including, affiliates, branches, divisions, subsidiaries, successors, predecessors, parents, wholly owned and partially owned entities, and any entity acting or purporting to act on behalf of each of the foregoing, including directors, officers, members, managers, agents, employees, partners, representatives, from promoting, soliciting, offering for sale, and selling any intellectual property related services.

269.    Order any other such relief as the Court deems appropriate.


    Respectfully submitted this 25th day of March 2019.


                    LegalForce RAPC Worldwide P.C.


                    By /s/ Raj V. Abhyanker
                    Raj V. Abhyanker
                    California State Bar No. 233284
                    Attorney for Plaintiff:
                    LegalForce RAPC Worldwide, P.C.

1

## **JURY TRIAL DEMAND**

2          Plaintiffs hereby request a bench trial for the declaratory judgment and injunction

3     causes of action, and a jury trial for all other causes of action alleged in this Complaint.

4

5          Respectfully submitted this 25th day of March 2019.

6

7                                                    LegalForce RAPC Worldwide P.C.

8
                                                     By /s/ Raj V. Abhyanker
9

10                                                   Raj V. Abhyanker
                                                     California State Bar No. 233284
11                                                   Plaintiff & Attorney for Plaintiff:
                                                     LegalForce RAPC Worldwide, P.C.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28