UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE P.C.,<br><br>Plaintiff,<br><br>v.<br><br>GLOTRADE, et al.,<br><br>Defendants. | Case No. 19-CV-01538-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 51 |

LegalForce RAPC Worldwide, P.C. ("Plaintiff") sued eighteen defendants, including WTMR, LLC ("Defendant"), for alleged violations of the Lanham Act, California's False Advertising Law, and California's Unfair Competition Law, as well as a claim for intentional interference with prospective economic advantage. ECF No. 1. Before the Court is Defendant's motion to dismiss.[1] ECF No. 18. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to dismiss with leave to

---

[1] Defendant's motion to dismiss contains a notice of motion that is separately paginated from the memorandum of points and authorities in support of the motion. *See* Mot. at 1-2. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with a combined limit of 25 pages. *See* Civ. Loc. R. 7-2(b).

1
Case No. 19-CV-01538-LHK
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND

amend.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a California professional corporation with a principal place of business in Mountain View, California and a law office located in Tempe, Arizona. ECF No. 1 at ¶ 18 ("Compl."). Plaintiff "offers services including trademark preparation and prosecution, patent preparation and prosecution, copyright registration and counseling, international trademark and patent filings, and corporate formation and stock and equity structuring." *Id.* ¶ 41. Plaintiff "has clients for intellectual property services in all 50 states and more than 300 cities and towns across America." *Id.*

Plaintiff alleges that companies, termed "Mailer Defendants," "use publicly available trademark filer information to send targeted 'solicitations' to . . . trademark applicants." *Id.* ¶¶ 2, 43. The "'solicitations' are constructed to [deceptively] make the trademark applicant believe that an official U.S. government agency or the [United States Patent & Trademark Office ("USPTO")] itself is sending a letter to them, raising fear among the unsuspecting public that they must pay large amounts of money or forfeit trademark rights." *Id.* ¶ 2. These "Mailer Defendants" provide no real services and "result in no value to trademark owners." *Id.*

Plaintiff alleges that Mailer Defendants "appear to originate . . . [in] countries outside the United States (most frequently from eastern Europe)." *Id.* ¶ 3. As relevant to the instant motion to dismiss, Plaintiff asserts that Defendant is one such "Mailer Defendant," and that Defendant lists a Washington, D.C. address for its business, but is actually located in Hungary. *Id.* ¶¶ 59-63.[2]

---

[2] Defendant filed a supporting declaration from Richard Popovics, the President of WTMR, LLC, who noted that Defendant is "a privately owned publishing company, incorporated in Delaware . . . [with] a current address at 601 13th Street, NW Suite 900 South, Washington, D.C. 20005." ECF No. 52 ¶ 3 ("Popovics Decl."). Popovics also explained that Defendant is not registered to do business in California and has no offices, employees, subsidiaries, or agents in California. *Id.* ¶ 9. Furthermore, Defendant does not maintain any bank accounts or financial accounts in California, and Defendant does not own or lease any real or personal property in California. *Id.* ¶¶ 10-11.

2

Defendant allegedly sends out unsolicited offers and directs recipients to pay a $980 registration fee to have the recipients' trademark listed in Defendant's publication. *Id.* ¶ 65. The unsolicited offer, however, fails to mention that trademark applications are a matter of public record and, once approved, trademark applications are published in the USPTO's Official Gazette. *Id.* ¶ 66. Instead, the unsolicited offer is "deliberately constructed to deceive recipients into thinking the unsolicited offer is a bill so the recipient will send a check as a payment for something they think is already owed to protect a trademark." *Id.* ¶ 80. Plaintiff alleges that it "has received over 40 unsolicited offers from [Defendant] in the past year, directed to both RACP's clients and to individuals employed by RAPC." *Id.* ¶ 73. Defendant acknowledges that some trademark owners who received Defendant's unsolicited offer "may reside in California," Popovics Decl. ¶ 8, but that Plaintiff's Complaint fails to allege whether it received Defendant's unsolicited offers at its California office or its Arizona office or whether Plaintiff's clients received Defendant's unsolicited offers in California or out-of-state.[3]

As a result of the Mailer Defendants' actions, Plaintiff asserts that "significant business" was deceptively diverted to Mailer Defendants. *Id.* ¶ 198. Plaintiff also alleges that Plaintiff's business reputation was harmed because Plaintiff "received inquiries from its clients confused about the unsolicited actions by the Mailer Defendants and worried that [Plaintiff's] services to the clients were somehow deficient." *Id.* ¶ 199. Plaintiff claims that it spent "valuable time and expenses to investigate the facts to appropriately advise its clients." *Id.* ¶ 200.

**B. Procedural History**

On March 25, 2019, Plaintiff sued eighteen defendants and alleged the following causes of action: (1) violations of the Lanham Act, 15 U.S.C. § 1125(a); (2) violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; (3) violations of California's Unfair

---

[3] Plaintiff attached a redacted copy of one of Defendant's offers to the Complaint as Exhibit 13. *See* ECF No. 1-1, Ex. 13. According to Defendant, Exhibit 13 was sent to Arizona, not California. Popovics Decl. ¶ 14. Plaintiff never contests that Exhibit 13 was sent to its Arizona office and not its California office. Plaintiff also fails to proffer any evidence that its clients received Defendant's unsolicited offer in California.

3
Case No. 19-CV-01538-LHK
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND

1 Competition Law, Cal. Bus. & Prof. Code § 17200; and (4) intentional interference with
2 prospective economic advantage. Compl. ¶¶ 203-61. The eighteen defendants fell into two
3 categories: "Mailer Defendants," which are entities that directly engaged in the allegedly false
4 advertising; and "Logistics Enablers," which are companies that provided domestic mailing
5 addresses to the foreign "Mailer Defendants" that facilitated the allegedly fraudulent conduct. *Id.*
6 ¶ 1; *see generally id.* ¶¶ 203-61.

To date, Plaintiff has voluntarily dismissed six of the seven "Logistics Enablers" and three of the eleven "Mailer Defendants." ECF Nos. 16, 25, 28, 33, 42, 48, and 72. The final "Logistic Enabler" defendant filed a motion to dismiss based on personal jurisdiction, and the Court granted the motion with leave to amend on October 23, 2019. ECF No. 82. Six of the "Mailer Defendants" were served but did not appear, and the Clerk entered default against them. *See* ECF Nos. 47, 64, and 66.

Of the two Mailer Defendants, one filed an answer (ECF No. 78), and the other one, Defendant, filed the instant motion to dismiss on July 22, 2019. ECF No. 51 ("Mot."). Defendant contends that Plaintiff lacks Article III standing to bring this suit, personal jurisdiction over Defendant is absent, venue is improper in this district, and that Plaintiff fails to state a claim. Plaintiff filed an opposition on August 5, 2019, ECF No. 57 ("Opp."), and Defendant filed a reply on August 12, 2019, ECF No. 63 ("Reply").

## II. LEGAL STANDARD

In the instant motion, Defendant raises four grounds for dismissing Plaintiff's Complaint: (1) lack of Article III standing, under Rule 12(b)(1); (2) lack of personal jurisdiction, under Rule 12(b)(2); (3) improper venue, under Rule 12(b)(3); and (4) failure to state a claim, under Rule 12(b)(6). Because Article III standing implicates constitutional limitations on our power to decide a case, the Court addresses Defendant's standing argument first. *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1148 (9th Cir. 2006) ("As standing implicates Article III limitations on our power to decide a case, we must address it before proceeding to the merits."). The Court then

4
Case No. 19-CV-01538-LHK
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND

turns to Defendant's personal jurisdiction argument. Because the Court resolves the case by addressing only Article III standing and personal jurisdiction, the Court confines its review of the applicable legal standards to those under Rules 12(b)(1) and 12(b)(2).

**A. Motion to Dismiss under Rule 12(b)(1)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. While lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such an attack, unlike with a motion to dismiss under Rule (12)b(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the

court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Motion to Dismiss under Rule 12(b)(2)

In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). While a plaintiff cannot "simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citations omitted).

### C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint for lack of Article III standing, lack of personal jurisdiction, improper venue, and failure to state a claim. Mot. at 11-26. Because the Court must address jurisdictional concerns first, the Court begins its analysis with Defendant's argument that Plaintiff lacks Article III standing. *Friery*, 448 F.3d at 1148 ("As standing implicates Article III limitations on our power to decide a case, we must address it before proceeding to the merits."). The Court then turns to Defendant's contention that personal jurisdiction is lacking. As explained below, the Court concludes that Plaintiff alleges Article III standing but that the Court lacks personal jurisdiction over Defendant. Consequently, the Court does not reach Defendant's remaining arguments.

### A. Article III Standing

"From Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark*, 572 U.S. at 125 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he irreducible constitutional minimum of standing contains three elements:" (1) an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61. "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id*. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (quotation marks and internal alterations omitted).

At the outset, the Court notes that Defendant conflates Article III standing and "statutory standing." *See* Mot. at 11-15. Defendant contends "[t]here is no Case or Controversy" between the parties, but then proceeds to argue that Plaintiff's suit does not come within the zone of

7

Case No. 19-CV-01538-LHK
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND

interests for a Lanham Act false advertising claim and that Plaintiff's injuries are not proximately caused by violations of the statute. *Id.* at 11. The "zone of interests" and "proximate causality" inquiries are relevant for "determin[ing] the meaning of the congressionally enacted provision creating a cause of action"—that is, whether a plaintiff has "statutory standing." *Lexmark*, 572 U.S. at 128-29.

As the United States Supreme Court explained in *Lexmark*, "statutory standing" is a "misleading" term because "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Lexmark*, 572 U.S. at 128 n.4. Rather, "statutory standing," insofar as courts continue to use the term, is simply a shorthand for determining, "using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. "In other words, we ask whether [a plaintiff] has a cause of action under the statute," and this inquiry is entirely separate from whether a plaintiff has standing under Article III. *Id.* at 125-26, 128.

Nonetheless, because Defendant characterizes its argument as one involving Article III standing and because "standing implicates Article III limitations on our power to decide a case," the Court construes Defendant's argument as one contending that Plaintiff has not adequately alleged an injury in fact. *See Friery*, 448 F.3d at 1148. Additionally, Defendant's argument is best construed as a facial attack whereby "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

8

conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). Additionally, "[a]n injury in fact must also be 'concrete' . . . that is, it must actually exist." *Id.*

Here, Plaintiff alleges that Defendant sends out deceptive, unsolicited offers and directs recipients to pay a $980 registration fee to have the recipients' trademark listed in Defendant's publication, even though trademark applications are a matter of public record and, once approved, are published in the USPTO's Official Gazette. Compl. ¶¶ 65-66. Plaintiff alleges that Defendant's unsolicited offer is "deliberately constructed to deceive recipients into thinking the unsolicited offer is a bill so the recipient will send a check as a payment for something they think is already owed to protect a trademark." *Id.* ¶ 80. As a result of Defendants' actions, Plaintiff asserts that "significant business" was deceptively diverted to Mailer Defendants. *Id.* ¶ 198. Plaintiff also alleges that Plaintiff's business reputation was harmed because Plaintiff "received inquiries from its clients confused about the unsolicited actions by the Mailer Defendants and worried that [Plaintiff's] services to the clients were somehow deficient." *Id.* ¶ 199. Plaintiff claims that it spent "valuable time and expenses to investigate the facts to appropriately advise its clients." *Id.* ¶ 200.

Under *Lexmark*, "allegations of lost sales and damage to . . . business reputation" are sufficient to "give [a plaintiff] standing under Article III to press [a] false-advertising claim." 572 U.S. at 125. Plaintiff's allegations are admittedly general, but they sufficiently allege damage to business reputation caused by Defendant's alleged false advertising. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (quotation marks and internal alterations omitted)). According to Plaintiff, Defendant's unsolicited offers "confused" clients and led them to believe that Plaintiff's "services . . . were somehow deficient," thereby leading to

9

reputational injury. Compl. ¶ 199. At this stage, that is enough, especially as the Court must "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Leite*, 749 F.3d at 1121; *see also Homeland Housewares, LLC v. Sharkninja Operating LLC*, 2016 WL 4154676, at *2-3 (C.D. Cal. Aug. 2, 2016) (holding that allegations that a defendant's false advertising damaged the reputation of a plaintiff's products in the mind of consumers and retail buyers were sufficient to allege an injury in fact).

Accordingly, Plaintiff adequately alleges an injury in fact at this stage of the litigation and therefore has Article III standing to pursue its false advertising claim. The Court thus DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court now turns to Defendant's personal jurisdiction argument.

**B. Personal Jurisdiction**

Defendant contends that Plaintiff fails to allege personal jurisdiction over Defendant. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800. "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. In such cases, we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (quotation marks omitted).

To determine the propriety of asserting personal jurisdiction over a defendant, the Court examines whether such jurisdiction is permitted by the applicable state's long-arm statute and comports with the demands of federal due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (determining scope of California's long-arm statute and examining federal due process requirements). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the jurisdictional analyses under state law and federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with

the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."). For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Courts "recognize[] two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are so "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (citation omitted). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State," "[b]ut only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State." *Id.* at 1780. Plaintiff does not allege that general jurisdiction is proper here.

Rather, Plaintiff contends that the Court has specific jurisdiction over Defendant. Opp. at 7-12. Specific jurisdiction is proper when a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Whether a court has specific jurisdiction over a nonresident defendant "focuses on the

11

relationship among the defendant, the forum, and the litigation," and "the defendant's suit-related conduct must create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781; *see Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over claims *unrelated to those sales*." (emphasis added)).

### 1. Specific Jurisdiction

For specific jurisdiction, the Ninth Circuit has adopted a three-prong test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id*. If the plaintiff does so, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.*

The parties contest the first two prongs of the specific jurisdiction test. Mot. at 16; Opp. at 8 n.2. The Court holds that specific jurisdiction—and therefore personal jurisdiction—is absent here because Plaintiff fails to allege that the claims arise out of or relate to Defendant's forum-related activities. Because the Court resolves this case on the second prong of the specific jurisdiction inquiry, the Court declines to address the arguments pertaining to the first prong.

#### a. Arise Out of Defendant's Forum-Related Activities

Plaintiff bears the burden of demonstrating that jurisdiction is appropriate, and specifically, that Plaintiff's claims arise out of or relate to Defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 800, 802. The Ninth Circuit applies a "but for" test to analyze the "arises out of" requirement. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Under this inquiry, a "plaintiff must show that 'but for' the defendant's forum-related conduct, the injury would not have occurred." *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,

12

325 F. Supp. 3d 1088, 1101 (S.D. Cal. 2018) (quotation marks omitted).

Plaintiff, in a single sentence, asserts that it satisfies the "arises out of" requirement because Defendant "directly sends mail to California residents and would then receive ill-gotten checks from California residents." Opp. at 11. Plaintiff, however, never alleges any of the California residents who received Defendant's unsolicited offers were Plaintiff's clients. Nor does Plaintiff allege that it received Defendant's offer in California as opposed to in Arizona. *See supra* n.3; Compl. ¶ 18 (noting that Plaintiff has offices in Mountain View, California and Tempe, Arizona and that Plaintiff has clients "in all 50 states and more than 300 cities and towns across America").

This defect is fatal for Plaintiff's personal jurisdiction argument. The United States Supreme Court has repeatedly reiterated that it is "the defendant's suit-related conduct [that] must create a substantial connection with the forum." *Walden*, 571 U.S. at 285. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781; *see also Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over claims *unrelated to those sales*." (emphasis added)). Indeed, *Bristol-Myers* is particularly instructive to this case.

In *Bristol-Myers*, "[a] group of plaintiffs—consisting of 86 California residents and 592 residents from 33 other States—filed eight separate complaints in California Superior Court." 137 S. Ct. at 1778. The California Supreme Court held that specific jurisdiction was proper over both residents and nonresidents alike because "the strength of the requisite connection between the forum and the specific claims at issue [could be] relaxed [because] the defendant ha[d] extensive forum contacts that [were] unrelated to [the nonresidents'] claims." *Id*. at 1781. The United States Supreme Court reversed and concluded that "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough," and that rather, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that

Case No. 19-CV-01538-LHK
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND

takes place in the forum State." *Id*. (quotation marks and internal alterations omitted). A contrary holding, the United States Supreme Court held, would conflate specific and general jurisdiction and elide important distinctions between the two. *See id.* ("Under the California [Supreme Court's] approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims. Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction.").

Here, the only evidence Plaintiff proffered was a redacted copy of one of Defendant's offers that Plaintiff received. *See* ECF No. 1-1, Ex. 13. According to Defendant, however, that offer was sent to Arizona, not California, Popovics Decl. ¶ 14, and Plaintiff never contests Defendant's assertion. Furthermore, Plaintiff also fails to proffer any evidence that its clients received Defendant's unsolicited offer in California. Therefore, because Plaintiff fails to allege that any California residents who received Defendant's solicitations were Plaintiff's clients—or that Plaintiff received solicitations in California versus Arizona—Defendant's forum-related activities cannot be characterized as a but-for cause of Plaintiff's claims and injuries. Plaintiff's claims and injuries did not arise because Defendant may have sent unsolicited offers to California residents unconnected to Plaintiff or this lawsuit. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Meyers*, 137 S. Ct. at 1780 (quotation marks omitted); *see Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over claims *unrelated to those sales*." (emphasis added)). Those residents who received Defendant's unsolicited offer in California may be able to assert personal jurisdiction over Defendant, but with the facts as currently pled, Plaintiff may not. In other words, in the instant case, the Court lacks personal jurisdiction over Defendant.

Accordingly, the Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction. Nonetheless, because granting Plaintiff an additional opportunity to amend the

14

Case No. 19-CV-01538-LHK
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITH LEAVE TO AMEND

complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court GRANTS Plaintiff leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### 2. Jurisdictional Discovery

Plaintiff makes a request for jurisdictional discovery in the event the Court determines that Plaintiff has not sufficiently pleaded facts to support personal jurisdiction. Opp. at 12-13. "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation marks omitted). A court can deny jurisdictional discovery, however, "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (quotation marks omitted), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Because discovery could demonstrate facts sufficient to confer jurisdiction, *see Am. W. Airlines, Inc.*, 877 F.2d at 801, the Court therefore permits jurisdictional discovery.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction. The Court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction with leave to amend and GRANTS Plaintiff's request for jurisdictional discovery. Plaintiff shall file any amended complaint within 30 days of this Order. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified herein or in Defendant's motion to dismiss will result in dismissal of Plaintiff's claims against Defendant with prejudice. Plaintiff may not add new causes of action or parties without a stipulation or leave of the Court.

**IT IS SO ORDERED.**

Dated: November 14, 2019

_____
LUCY H. KOH
United States District Judge